Dr. Roberts, this case under Doctrine 2-14-0445, Lend, Tax, Payback, Penitent, and Fee, is the Illinois Department of Criminal Inspection and Regulation, et al., Defendant's Appellant. Arguably, we have a Defendant's Appellant. Her name is Mary C. McBrackett, in the Solicitor General's Office. Arguably, we have a plaintiff's appealee. Her name is Lawrence A. Stein. Ms. Lebray. Good afternoon, Your Honors, Counsel. My name is Mary Lebray. I'm an Assistant Attorney General here representing the Illinois Department of Financial and Professional Regulation. A number of issues have been raised at various stages of this case, but the central issue is very simple. This is an action for administrative review of the decision of the Director of the Division of Professional Regulation, made upon recommendation of the Certified Shorthand Reporters Board. The standard of review is abuse of discretion, which is very deferential and has been described as the next thing to no review at all. The application of this standard means that the agency decision must be upheld unless no reasonable person could agree with the decision. In this case, we believe it cannot be said that no reasonable person could agree with this decision. We believe that revocation was an appropriate sanction for four reasons. First, to show that the past violation was a very serious issue. It involves children, some of the most vulnerable members of our society. It was not a temporary lapse of judgment, but was conduct that spanned years. It involves viewing child pornography, not actual children, correct? Well, there were actual children in the photographs of the child pornography. I understand that, and that's a point that's well taken, but he was not convicted of an actual assault or abuse of a child. It was viewing child pornography, correct? That's right. I mean, it's an important distinction, but your point's well taken. Those children are still victimized, regardless of whether you're just viewing it or not. By viewing it, you create the marketplace for the child pornography. Yes, Your Honor, and we think that is an important distinction there because he did not just view things on the Internet. He helped support the international trade in child pornography. He subscribed to not one but at least five sites that he used over a span of years, and that's how he was caught in this case. I just want to make it clear that what we're talking about is not an actual physical contact with a child. That's right. We have no evidence that there was any actual physical contact with a child. Is there any reason in the record why this individual was charged in 2005, plead guilty in 2007, completed probation in 2009, and then there wasn't an administrative complaint filed until 2010? Your Honor, the reason that the administrative complaint was not filed for so long is that the department depends on the complaint system. It depends on receiving complaints from members of the public, from the licensees themselves, from state's attorneys, from U.S. attorneys, and from news sources. They don't have access to any easy way to track the convictions in 102 counties in the state and all the relevant foreign convictions. So they simply didn't have that, as the Director explained in his second decision. They didn't know about it at the time. Theoretically, he flew under the radar screen for those years. Yes, Your Honor. Isn't that something we should consider, though, according to the case law? He did serve a six-month suspension, but if we were to affirm the board now, he would then be revoked. The first decision was to revoke his license. If we were to affirm the board now, he would be revoked in almost 2016 when there's no evidence of him viewing child pornography after the search warrant was served in 2004. We're talking about going on 12 years, correct? This is true, but the fact that it was not brought to the attention of the Department earlier is not a factor that weighs in favor of a lower sentence here. There is some significance in the fact that he was not caught again, as far as we know, doing this. But the reliance on that has to be tempered by the fact that we're dealing with a particular kind of offense that is very difficult to monitor, difficult to detect. It's done in secret. The victims aren't able to report. He's an addict, is essentially what you're saying, and he can't be trusted. Well, he testified that he felt addicted to it and that he was unable to control it. He says later that he was able to control it. But to protect the profession and its role in the legal system in the future, we think that revocation is reasonable on that ground. We also want to purchase deterrents, which will both protect the profession and the public indirectly by making others think twice before getting involved in this kind of activity. And finally, we think that it's important that Sontag have to prove that he's a good risk instead of simply assuming that he is. When given the choice of a sanction that simply runs out at the expiration of a certain time period, and a sanction that requires that he take active steps to seek reinstatement and prove that he is unlikely to reoffend and that he is worthy of being included back, we think is important also. Is he a registered sex offender? Yes, he is. He is required to do that for the rest of his life. So that does give some, not guarantee, but there is someone who's aware, local law enforcement is always aware of where he's at, what he's allegedly, where he's working, because he has to report the change of employment, etc. He has to report to local law enforcement if he goes on a vacation, etc., correct? It should be. They should be able to do that. But the act intended that the department be able to add additional protection for the public in addition to whatever things there may be as part of the criminal laws. But the point is that regardless of what happens with his standing as a court reporter, there is local law enforcement that is allegedly keeping an eye on him, correct? Yes, that is true. We simply think that's insufficient to protect his particular role in the profession and legal system. Counsel, let me ask you this question. Your opponent cited many cases where the courts found that the revocation or the suspension was overly harsh. One case in particular is the Kaifen case, where you had a psychiatrist who had a relationship with a patient. And the court in that case found that the punishment was overly harsh. How do you distinguish that case from the facts of this case? I mean, you have a court reporter who is not dealing really with anybody on a one-on-one basis. And here, you had a psychiatrist who they give him his license back to sit in a room alone with a patient. Well, Your Honor, we do think that it is distinguishable in a number of ways. There was no criminal conduct involved in the Kaifen case. The conduct involved did not involve a child. It was a 19-year-old person. But wasn't he giving her alcohol and marijuana? There were allegations of that. But, Your Honor, our principal problem with that case is the fact that he was – we do not think that it was proper to rely on the – to look for whether it was overly harsh in light of the mitigating circumstances and to do a simple comparison of cases to see which one was more egregious. Now, there is a sense in which a decision may amount to abusive discretion because it is too harsh or because other cases have been decided differently. But only if the harshness or the difference in the cases enables us to infer that the agency was not exercising its discretion. You can see this clearly expressed in some of the earlier cases on page 29 of my opening brief, like Kotowski and Citrano, where they use language so harsh as to be arbitrary. And when you look back at those earlier cases, you see that there is – they apply here the regular abuse of discretion standard. There are all kinds of formulations with things like arbitrary and capricious, arbitrary and unreasonable, unrelated to the purpose of the statute, discipline unrelated to the needs of the situation. But all of these formulations come down to the same thing. The agency can be reversed if it misconstrued the law or for some reason failed to exercise its discretion. Well, most of the cases that you cite, or a lot of the cases that you cite, are the cases involving attorneys. Again, isn't it a little different situation when you have an attorney sitting in an office or he's an officer of the court? It's a little different than a court reporter, don't you think? Well, there is a – attorneys do have more influence on the judicial system and there is a greater reputation impact. But if your honor wants not to consider the moral conduct of court reporters, the problem that it has is not with the department but with the legislature, which specifically directs them to consider moral character as a part of the qualification and to consider whether they've been convicted of any felony and to consider conduct that is unethical, dishonorable, and so on. Well, we rely on court reporters to be accurate and honest in their transcriptions, correct? We do. And so moral character is definitely important. Yes. And part of the problem that we have with Kafin and Lamb is that there's been some slippage in the cases and they've lost the limitation on the review for harshness and the examining of similar cases. Your argument is that if the board failed to exercise its discretion, then we can reverse, but if the board exercises its discretion, then that decision is set in stone and there's nothing anyone can do about it? There's a certain scope of discretion that the director has, and if he misconstrued the law, you certainly can correct him on that. And if he has exceeded the scope of his discretion in some way or if he's failed to exercise discretion by doing something arbitrary, but that's it. You said something different there. You said exceeded the scope of his discretion. I don't know what that actually means. You're talking about being unreasonable, correct? I mean, if it's unreasonable. If he received a ticket for littering and then you guys pulled his license, that might be considered unreasonable, but it's still an act of discretion by the director. At some point, harshness could be considered arbitrary and unreasonable, but our point is that this is a very, very strict test. It's next to no review at all. There should not be most of these cases, and we certainly should not be doing it just because we think it's overly harsh. That is what courts still today say that we shouldn't be doing. We shouldn't be substituting our judgment. Yes, and we shouldn't be weighing the circumstances. When you look at whether something is overly harsh in view of the mitigating circumstances, that's what you're doing. And there's no justification in looking at cases and just asking whether one is more egregious than the other. Well, what is the relationship between his conduct and the Court Reporters Act? I mean, the Court Reporters Act says it's designed to encourage proficiency in the practice of shorthand reporting as a profession, to promote efficiency in court and general reporting, to extend the public protection afforded by a standardized profession by establishing a standard of competency for certified shorthand reporters. So what is the correlation there? I mean, trust me, I'm not playing devil's advocate here. I'm trying to get you to tell me that. I understand the seriousness of child pornography, but how is child pornography viewing some, how many years ago, going to impede his ability to be a good shorthand reporter? We're not saying that it is strictly going to cause errors in transcription or make his transcripts late or things like that. What we are saying, though, is that the purpose of the Act is broader than that. It says, that sentence comes from the legislative declaration section, but there are other sentences that indicate that he is supposed to merit the trust of the public. And when you look at the Act as a whole and you look at all the provisions, including the requirement that you have good moral character to qualify, when you look at the fact that they say any felony, not just felonies that happen in the course of your court reporting, when you look at the language that says anything unethical, dishonorable, and so on, it's clear that they're concerned about the integrity and the reputation of the profession as a whole and also in protecting the judicial system and the public insofar as they are affected. Now, are we reviewing both of the department's rulings? The first one with three years and then the other one with two years? The second one with two years? Well, the first one was revocation. Right. And the three-year period is relevant there because after three years he can seek reinstatement and then he can then make his presentation to the director about it. Correct. So that's a three-year hard suspension, correct? He can't get away from that? Right. With revocation you can't get back. The statute says that it's limited to. But then the indefinite suspension, we're reviewing that as well. Yes, and that is a two-year suspension and after that he may seek to be reinstated. Is the two-year suspension a hard suspension or is that at the discretion of the board? Well, it's an indefinite suspension. It means I believe in an indefinite suspension they can put whatever conditions they like and I believe they said they would entertain a petition for reinstatement after the two-year period. So they could have suspended him with the right to seek reinstatement, put the burden on him, as you're saying, right now? They could. Okay, and they could put him on probation and tell him to go get a sex offender evaluation. Right, but that is likely to be of limited value because no one is going to be able to examine him right now and say right now he is or is not a risk. The kind of testimony we're probably going to need is someone who's had longer range exposure to him. And also while putting the burden of proof on him is taken care of by an indefinite suspension, we think that for the other reasons, the seriousness of the offense, the difficulty of monitoring, the likelihood of recidivism, and also deterrence. Deterrence is a factor of the strength of the sanction multiplied times the likelihood of getting convicted. And so we think those other things warrant revocation as opposed to just indefinite suspension. There are some sanctions in the criminal code, for example, public contract or misconduct. Even though it doesn't involve a violation of any child or any, it's a property crime, but anybody convicted of that offense, you cannot do business with the state of Illinois or any subdivision in the state of Illinois for 10 years. And here we're talking only three years at maximum that he would be, where he could not come back. Does that make any sense? Somebody who commits an offense involving depictions of children can get back? And somebody who commits a property crime against the state can't get his, can't go back to that business for 10 years? Does that make any sense at all? We think that this is well justified in the context of laws like that and also specifically in laws affecting this kind of offense. Because after he was convicted, the legislature amended the provision again, and he would have had a higher level of offense if he were convicted today. They did require that he register as a sex offender for the rest of his life, which signals how seriously they took that. There are health care workers who are automatically revoked. They get no hearing. They get, you know, there's no, the department does not have discretion not to revoke. Yeah, but who are they working with? Who's a health care worker working with? All kinds of people. They're not all necessarily working with small children or, you know, there are people who are affected by that act, but you would arguably say are no more likely to offend in the course of their work than Mr. Sontag is. And we also note in this connection that the peer review board, the certified shorthand reporters board, agreed with this. The director wasn't doing this over them. This is what they recommended to the director that he do. Your time is up, so if you want to wrap up, you will have an opportunity for a rebuttal. Okay. The director did not misconstrue the act, and the sanction was not so harsh as to suggest that it was arbitrary or that the director, in any other way, did not exercise his discretion. Therefore, this court should reinstate the director's original determination to revoke Sontag's license. Thank you. Mr. Stein, good afternoon. Good afternoon, Your Honor. My name is Larry Stein, and I represent Glenn Sontag. May it please the court. Of course, the administrative decision is subject to some review. It's not subject to no review. Of course, if the department abused its discretion or if its decision was arbitrary or capricious or if its decision was unrelated to the purposes of the act, its decision is subject to your review. And it's subject to the trial court's review. Is it up to the court, still, to reweigh the mitigation? It shouldn't be, but in this case it was, just like in Calabrese, which was cited by the trial court and in all the briefs. That's the Park District case. In a perfect world, where we wouldn't have three- and ten-year dichotomies like Justice Burkett mentioned... Well, there are all kinds. I just threw it out as one example. Somebody who commits a property crime that may involve very little in terms of harm to the state, is banned for ten years, and a person in this situation who is involved in a despicable series of offenses can be back in three years. Yes. And that's, you know, so how does that tie into your argument as to the reasonability of the sanctions? Well, I'll tell you, I'll be honest, I did not know about the ten-year statute. Well, there's all kinds of them out there. Of course, of course. I think it's comparing apples to oranges. It's the only thing I could think of when you asked it. They're just different animals, different purposes. I don't have any way other than that to explain it. Well, the point of that provision, or why I'm sure that that is in the law, is that there are no guarantees a person's not going to do it again. So you ban them for ten years. No hearings required. But here there is a hearing. And how is the sanction unreasonable? Well, the sanction is unreasonable for the exact reason the presiding justice mentioned in Kaifen. Kaifen hasn't been overruled. Kaifen is a decision of this court. And as the presiding justice correctly pointed out, there was a psychiatrist with a vulnerable patient, and that psychiatrist did immoral conduct with his patient. Maybe it wasn't unlawful because she was 19 and not 18, but it certainly was immoral. It certainly violated the psychiatrist's own code. And this court has already decided that six months was too harsh for that, if I remember the facts correctly. Well, you know that the decision of another panel of this court is not binding on us. It's pressing. Of course it's pressing. You can do whatever you want. You are the court. I'm just here to tell you why I think it was unreasonable. And one of the reasons especially is, you know, I can get into the details about the dates and I can suggest some ideas about why there was a delay. But what is most telling in this case in the record is the administrative law judge's report. So there was a trial in front of an administrative law judge. Witnesses testified, some in person, some by letter. The defendant testified. I guess he was the plaintiff. Mr. Sontag testified. Circuit judges testified in person. Judge Sheldon, you read the record. Judge Sheldon came to the state of Illinois building. He had to wait like three hours before he could testify. He sat down and said, Glenn, I've known Glenn Sontag for 20 years and I've never seen him do anything like this. And he's never done anything like this that I'm aware of like this. You know, perpetrators against children, whether they're doing child pornography or physically abusing children, don't broadcast it. And it's not uncommon at all for adults in the community to hold people in high regard, people in all kinds of professions, from lawyers to judges to doctors, physicians, coaches, teachers, who abuse children. And when they are found out, everyone is shocked because that is the natural inclination that we have as trusting adults. We trust our fellow man until it's discovered that they're despicable human beings. The news does give us such portrayals, and you're right. It's not just news, it's experience. And experience. You're right. I'm not advocating that Judge Sheldon's testimony is proof that Mr. Sontag didn't do this. Well, it's also not proof that the director acted unreasonably. Well, I think... Or is it? I think it is. And I'll tell you why I think that way. I think it was the director's responsibility to consider both the facts in aggravation and the facts in mitigation. And what was telling about the administrative law judge's report that the board of court reporters adopted, that the director adopted, is that even though there was a stark dichotomy at the trial between the requested outcome, the department asked for revocation, Mr. Sontag asked for a censure or a reprimand, that was the case. That was the whole case. That was the... Those were the poles that were set up by the closing argument. The administrative law judge's report doesn't address what should be the appropriate punishment. It doesn't discuss or analyze. Should it be a revocation? Should it be a suspension? Should it be six months? Should it be nine months? Should we chop his head off? It just says severe penalties are warranted without any further discussion or explanation. And that, Your Honors, I submit to the panel, is evidence of the abuse of the discretion that occurred. What occurred was a reasoned judgment was not made. Mr. Sontag... Just because something is not reduced to paper doesn't mean it's not a reasoned judgment, does it? No. When a trial judge imposes a penalty, he doesn't have to list the reasons, as long as the entire record shows that he considered the relevant factors. Well, I mean, you're right, obviously. And I'm not saying that my evidence is conclusive. I'm saying it's suggestive of a lack of consideration of both aggravating and mitigating factors. And the lack of considering Mr. Sontag as a whole individual. He is a person. He did horrible things. He was punished under the criminal law. And then there was a long lapse of time. And, you know, even people who do horrible things are entitled to consideration of their whole person. And that's what this Court, I think, is here to do. That's what the trial... You would agree that the offense here was very serious? Absolutely. Would you also agree, as counsel has argued, that there's some deterrence that should play a part in the Court's decision in this regard? I won't concede the deterrence. No. I think the purposes... I think the statute that governs the Department says that the purposes of the licensing scheme is to protect the public. No. But, I mean, you've argued about the purpose. But, I mean, it also says qualified individuals, and it refers in that section to be of good moral character and all those things. And the Code does allow for revocation for commission of a felony totally unrelated to the work as a court reporter. So, I mean, there's all kinds of bases for this sanction, at least arguably, in the Code. But my question is, you've got a ton of mitigation that you've set forth in your brief, and you've argued here. And then you've got, as counsel argued, the serious nature of the offense, the deterring effect that hopefully this might have on some other court reporter who's, God forbid, thinking of looking at child pornography. And the question is, you know, how is this arbitrary and unreasonable if you have the Director weighing these things and coming to a determination? You know, Baltus talks about the consideration of the relative severity of the sanction isn't what we should be doing as long as it's not arbitrary. And that's where the line is. You know, where does it stop being weighing the severity and start becoming arbitrary or capricious? That is the question that we're here to decide today. And I think Kaitlyn answers that question or at least provides a precedent for that. And to the extent that Your Honors consider it to be a well-reasoned decision, Kaitlyn gives us some idea of what an appropriate sanction might be in situations roughly like this. In Lamb? I'm sorry? Lamb, the other case. Right, Lamb as well. I mean, there's a series of cases. And, you know, we can't let the Director have complete and unreviewable discretion. That's why we have the Administrative Law Code or whatever it's called. And even if we didn't have the administrative review, you'd always have the right to review it under a writ of certiorari. If Ms. Lebrecht is arguing that you shouldn't be reviewing this, then why are we here? Why did you ask us to come here today? Clearly, you have to review it at least for abuse of discretion. And with Kaitlyn and the time span and the loads of mitigating evidence and character evidence, time span, if I'm repeating myself, lack of any evidence of any recidivism in this individual. And Ms. Lebrecht said, we can't know. But Justice Byrd had answered that question correctly. We know where he lives. The Internet can be monitored. That's how they, I mean, the record reflects. That's how they caught him. They monitored his, I don't know, I don't know how they did it. He got caught because at some given point in time, somebody was looking. Some police officer, correct? That's right. That's exactly right. You know, that's like finding a needle in a haystack. I don't know. I've never sat in that room. But I think for every one, there's thousands out there. Well, I don't know if the record supports that. Your experience may give you greater insight into that. It tells you that police can't be watching millions of people, millions and millions of people who have Internet access. I don't know. Maybe there's a code. Maybe there's software that monitors this. Clearly, in this case, there was an image that law enforcement knew about so they could catch its signature. And, you know, with the Patriot Act and all the filtering that's going on, I don't see how just because he lives in a house and that we're not looking at him while he's using his computer that we can't find out what he's doing. Law enforcement couldn't find out what he was doing if they want to. Well, I mean, does the board have the authority to place him on probation? Absolutely. And as a condition of probation to have evaluations and to make his computer available to them and to only have a work computer and not a personal computer and certain other conditions of probation? I don't think they'd have wide discretion to impose whatever. If they had that discretion to impose a lesser sanction than not only the two years or the three years, but a lesser sanction than what Judge Ackerman imposed, why doesn't this case mandate reversal of the board? Why doesn't this case mandate reversal of the board? To the board. Or mandate. Okay, that's a good question. And I think it's, you know, I don't want to cast aspersions, but the director didn't react well to the first judgment that the trial court rendered. That's putting it mildly. Was it proper for the trial court to impose its own sanction? Yes, it was. How so? Because the Administrative Law Act, that's what it's called, the Administrative Law Act, or maybe that's not what it's called, says that the court in a case of administrative review has the right to reverse, affirm, or reverse in part, and affirm in part. And what Judge Ackerman did was he affirmed the sentence to the extent that it was a suspension of six months, time served, which I think it worked out to be exactly that, and he reversed both judgments, both decisions of the administrative agency, to the extent they exceeded a suspension. Yeah, but he imposed his own sentence, if you will. He did. How is that proper? He's allowed to reverse in part or reverse and remand, but where does it say he can sentence? It doesn't, but it says he can. But he did, didn't he? He affirmed in part and he reversed in part. He affirmed the first six months of the suspension, and he reversed every day thereafter, whether it's a revocation or a suspension. Was the two-year suspension going to end on its own, or was it subject to him seeking reinstatement after? He had the ability to seek reinstatement after two years. This is the latter. The latter. So how can he then remove that? I mean, basically, you're saying he affirmed this little part of the suspension, six months, and it's still a suspension. I can see your argument a little clearer if, in fact, the board said two years, and then at the end of two years, you get your license back no matter what. But the board didn't say that. The board said, we're putting another condition on this, and the suspension is you come back to us and we'll check it out and see whether you meet the burden. So how does then Judge Ackerman basically affirm that part of the suspension, six months, but throw out the part that makes him come back and ask for reinstatement? Well, just like your honors have the right to do, Judge Ackerman had the right under the law to affirm part and reverse other parts. And Calabrese makes clear that, you know, that essentially means the judge can re-sentence. So you're saying we have the ability to re-sentence him on this? As a matter of judicial power, I'd say you do. No one's asked you to, so I think it might be an overreach. But did anybody ask Ackerman to do that? I begged him to. I begged him to, and he refused the first time. He remanded. And when he got the result, we talked for a few minutes about the response of the director, the second administrative discipline. I mean, we know the response. I mean, we read the record, and we know that Judge Ackerman voiced his dismay with that and said it based on judicial power. And I said it back there again because nothing's going to happen that I want to happen. Basically, Judge Ackerman said the outside, the maximum this person should get is a six-month suspension. That's right. But my question is, what if the director says, okay, you know what, Judge? I know Judge Ackerman didn't think the director would say this, but said, okay, Judge, you're saying the outside is six months. I'll buy that. But we're going to add something to it, which is a lesser. You know, we're not even going to suspend him. You said the outside's six months. We want to give him probation with some conditions. I mean, why shouldn't the director have that possibility? I mean, the judge, by saying two years is too much, I mean, isn't that an overreach to then say, based on judicial fiat, this is the maximum and this is not only the maximum, this is the only sanction that can be enforced? I think after hearing this case twice and seeing the conduct of the department, Judge Ackerman was in a particular position to evaluate what the harshest sentence that would withstand his scrutiny, his appropriate scrutiny in administrative review was. And that's what he did. He said six months was the outside amount. And we're not going to remand it every time until the department gets it right. Do you know how often we do that? I don't know. I mean, in a sense, this is an important case well beyond Mr. Sontag. This is the executive versus the judiciary. No other cases of court reporters that you have filed? Right now, none. You know, maybe that's because of the demographics of court reporters, but this is a unique situation among the precedents in our law that I've been able to find. And this is a felony offense, not a misdemeanor offense. It is a felony. So that's another thing that begs the question is how can we say they abused the discretion? It was a felony offense, not a misdemeanor offense. I think is it the Grog case? We talked about that. Well, I'll try to answer that. So merely because it's a felony offense doesn't usually affect one's job performance, but should we ignore the fact that it's a felony offense? No. You shouldn't ignore any relevant and material evidence. And I think the director did. Okay, it's a felony. It's a bad thing. It's a horrible thing. No one's here telling you anything else. None of us in this room think it's anything other than a horrible thing. But basically they imposed the death penalty without considering Mr. Sontag as a whole person. And the trial court saw it differently and, you know, remanded. You're comparing this to the death penalty. You're right. That was inappropriate. Judge Aikman mentioned that. I mean, he could go get another job somewhere else. You're right. You're right. That was a bad phrase. Imposing the worst sentence that the board, the director, had the authority to impose. That's what I meant when I— I understand. I wasn't really referring to the actual death penalty. What would you want us—what do you want us to do just to affirm what Judge Aikman did, certainly? Yes, absolutely. In the alternative, what would you suggest that we do? If we say, no, we're not going to affirm what he did, what do you think we can do to give direction to the board? Well, there's a lot of things you could do. You could give more precise guidance to the board. You could tell the board what your opinion is of the outside limit. You could do whatever you want. But, I mean, the fact that has not been contested and cannot be contested is that—I don't remember who said it. Someone said it. It's been 12 years. There's been no evidence that he's recidivized. He testified that he didn't. You know, he's lived in a house. He's registered. There's no evidence he didn't register. There's no evidence, and you'd certainly have if there was, evidence that he's been charged or convicted of failing to register. He could be watched. I presume he was watched. You would know better than I. And, yes, this is something that's done in secret, but it's not something that can be hidden from law enforcement very well. And it begs the question, why did they wait? Why did the department wait? Ms. Labreck said— Why did they what? Wait. Oh. Why did they wait? She said they were not notified. That's what she said. They rely on complaints and news media reports. But she didn't mention it. Maybe—and I don't know that I pointed this out in that brief, but it's in the record. The prosecutor for Mr. Sontag's criminal prosecution before Judge Sheldon was not the state's attorney of King County, because Mr. Sontag's defense lawyer had conflicted with the state's attorney out. And the Attorney General of Illinois, Ms. Labreck's employer, the appellant, they—the Attorney General of Illinois, the appellant in this case, prosecuted the case in front of Judge Sheldon. The appellant's attorney in this case. The appellant's attorney. It's the director. It's the appellant. Right, right. A court-recorded report. So the Attorney General knew. It was a public record. It's only 102 counties. Ms. Labreck says they don't know—they don't have an easy way to— I mean, your argument's well taken. They should have reported it. Is there any record that they did report it? I mean, if you had a record that showed that there was a report to the attorney—or to the director, I think your argument would have some force. I don't think there's anything of that in the record. Every assistant state's attorney or every assistant or deputy attorney general doesn't always report what's going on in the courtrooms to the boss. No, I can see that's obvious, and you're absolutely right. But this was a judgment of a conviction of a felony in one of the 102 counties in this state. It's a matter of public record. It would be very easy for the department to set up a very simple procedure to get annually copies of the felony convictions, either of all people in all 102 counties or of all the people who had licenses. Was there—does a court reporter have to pay a fee, just like we do as attorneys, every month or every year? Did he ever report it? He wasn't required to. He did not report it. The General Assembly has changed the statute since these facts occurred, I believe, and has now imposed a duty to report. And I think at the beginning, Mr. Sontag—one of the original complaints brought at the administrative agency alleged that one of Mr. Sontag's events of misconduct was failing to report, but he was not required to report. He is—court reporters now are required to report, but he wasn't required to report, and he got his renewal in the mail just like we do every year. He sent it in, and he answered all the questions they asked, and they continued to renew his license until the Quinn administration—until the Quinn administration. There was—I mean, this is kind of outside the record, but it's in the complaint. The Tribune did an exposé. They got a list of the people on the sex offender registry, which anyone can get, and they did a Freedom of Information Act request to the Department of Professional Regulation. They got a list of the licensees, and they matched those two lists. I don't believe they checked the master roll of attorneys, but they checked those two lists, and they found that there were hundreds of people who were both on the sex offender registry and holding licenses in the state of Illinois. They published a series of articles about that, and shortly after those articles were published, this disciplinary action was commenced in the administrative agency below. So when you consider whether the director abused his discretion, I would urge you to consider all the factors—the time, the time between, the time after, the mitigation, the seriousness of the offense, the fact that he, as you said in your last judgment on this case, that he's considered rehabilitated under the law, and the burden is on—he should be reintegrated. The director put no consideration into any of those things, didn't address them, didn't hold a hearing, didn't issue a rule saying, show me this, just bam. And what was improper, beyond how Judge Aikman reacted to the second administrative decision, what was procedurally wrong about it was the director was so displeased with the first judgment of Judge Aikman, it was not his place to right his displeasure. Judge Aikman's judgment was the judgment of the law. He either complied with it in good faith, the director complied with it in good faith, or appealed. But he chose a middle ground and wants to have it both ways before you now. And I can tell you that's improper. And shows his suggestive evidence that you can use to conclude through circumstantial evidence that the director abuses discretion. Because he didn't consider the relevant facts. He didn't say he did. There's no evidence that he did. Obviously, he doesn't have to write down every thought. But what we can see is suggestive of an arbitrary and capricious decision that did not take into consideration all of the facts, and was unruly, harsh, and uncapable. And I would ask you to affirm Judge Aikman's second judgment.  Thank you, Mr. Steinberg. Thank you. Your Honor, I'd just like to mention a few things. One, the department didn't ignore the evidence. The department considered all the evidence. It just found it outweighed. He wanted the circuit court, and he wants this court to weigh the evidence. And it does not have authority to do. The Kafin case did not directly consider the statute, the abuse of discretion standard, and exactly where to draw the line. It simply applied the language of prior case law. And it also considered similar cases that were more similar to that particular one. We have very different cases here. The character witnesses that he relies so much on, the problem with those is that they observed nothing different than they observed when he was, by his own admission, offending and a bad moral character. What they said about him and how they felt about that, that didn't change. And they also had no expertise that would lead us to predict a different result this time. That's why the director properly didn't give them great weight. Do you find it a little disturbing that the attorney general's office prosecuted this case and then never did anything to follow up? Well, Your Honor, I don't know what happened in this case. The record isn't specific about what happened, whether they tried to report, whether they forgot to report. But, I mean, is it fair to this guy who had been out, you know, he served his time. He was sentenced. He served his time. He complied with his probation. He was released from his probation. His case terminated. He's going along his merry way. And then all of a sudden, the attorney general's office comes in when they could have come in the day after he was sentenced. Well, you could also see him as getting a benefit, you know, because he didn't have the revocation then. He didn't have the three years to wait until he got reinstated then, and he's going to have it now. So, in other words, he benefited from the oversight by the assistant prosecutor who handled the case. Yes. And I'm not sure if that assistant had informed the attorney general she would have initiated a report to the director or someone would. It was not required at the time. Were prosecutors required to report convictions at the time? I don't know about that. I don't believe they were. You have a child. As you said, it offends you to no end that it's child pornography. They prosecuted child pornography, and they don't have an obligation to report it with all due respect? Well, Your Honor, even if you think that the AG should have done something different or you think that the department should have done something different to make sure it had all the convictions, that still is not a reason for confining its discretion to do the right thing later when it discovered what had happened. Well, I agree with that. I agree with that, but I'm not going to make an excuse that they didn't have an obligation to report. You prosecute a child sex case. A man has a license for the state, whatever that license may be. Don't you think it would be wise to report that to whomever the agency is that monitors the license? I didn't say I didn't think they should report it. I said I didn't know what happened. All right. They may have tried to, for all I know. I guess my question is do you think it would have been wise to report it? I do. It probably would have been wiser to ask the court to order the defendant to self-report that, as opposed to reporting it to some supervisor who may or may not do something. But, I mean, if I was a prosecutor, I'd ask the judge to order the defendant to report it, or I would simply write a letter as the prosecutor doing the case, knowing this person holds a licensure by the state. It's the same problem with doctors. It is doctors who've been prosecuted and were never reported. The law has changed. People are waking up. Yes. That's not a reason to reverse the department now or to say that they didn't properly exercise their discretion at the time that they made that decision. Even if it represented a change in position on their part, what this court has to determine was, was it an abuse of discretion given the state of the law at that time, given the way that other reasonable people have dealt with similar offenses, given the need to have some deterrence to reflect the seriousness of the offense to prevent recidivism, or not prevent recidivism, but to prevent the recidivism from impacting the profession and the legal system. Couldn't a lesser sanction, though, accomplish all the things that you're talking about? I don't think a lesser sanction could account for the seriousness of the offense. The department felt it shouldn't. And this is something about which people can differ. But the legislature chose to give the determination. And there are people that debate this. There are articles about this, what we should do. Are we getting too hard on offenders? Are we not hard enough? But the department gave this decision to the director and said, you look at the circumstance of the case, you look at all of the current state of our knowledge, and you make the decision. So it spared this court that difficulty. And there's no provision for the court to go back and second-guess that determination, to substitute its own judgment. Your time is up if you want to wrap up. Oh. I'm sorry. For good reason, no state of the law briefs. The defendant of the appellant's request that this court reverse the circuit court's orders of August 12, 2013, and April 4, 2014, thereby reinstating the director's revocation of Sontag certified court responses. So which sentence do you want us to affirm? Which punishment do you want us to affirm? We would like you to reinstate the revocation. The first one? Yes. And in the process, you would like us to somehow disavow K-5, correct? I would like you to clarify the standard of review and say that the test for abuse of discretion is too harsh, subject to the limitation that it has to be so harsh as to be arbitrary or to indicate that they haven't exercised their discretion. And you look at cases, if they're very close, again, in order to enable an inference that they weren't properly exercising their discretion, not because some judge decided in the case that the court thinks is more or less egregious than this one. Thank you. Thank you, both of the parties, for your argument. And the court will take this case under consideration.